ROBERT SASSONE ET AL. *v.* RICHARD LEPORE ET AL.
(14693)

PETERS, C. J., CALLAHAN, BORDEN, BERDON, KATZ, PALMER
and SANTANIELLO, Js.[1]

[1] This case was orally argued on June 8, 1993, before a court of five justices consisting of Chief Justice Peters and Justices Borden, Berdon, Katz and Palmer. The court subsequently determined that the case should be considered en banc. Pursuant to Practice Book § 4112, Justices Callahan and Santaniello were added to the court and considered the case upon full review of the record, briefs and transcript of the oral argument.

Argued June 8—decision released August 3, 1993

*Donald W. Celotto, Jr.,* with whom, on the brief, were *John A. Keyes* and *Martin M. Looney,* for the appellants (plaintiffs).

*Ellery E. Plotkin,* with whom was *Vincent J. Freccia III,* for the appellees (defendants).

*Catherine P. Whelan* and *Melvin J. Silverman* filed a brief for William Raveis Real Estate, Inc., et al. as amici curiae.

PETERS, C. J. The dispositive issue in this appeal is whether the prejudgment remedy statutes, General Statutes §§ 52-278c and 52-278d,[2] are unconstitutional

---

[2] General Statutes § 52-278c lists the documents that must be provided by a person desiring to secure a prejudgment remedy.

General Statutes § 52-278d provides: "HEARING ON PREJUDGMENT REMEDY APPLICATION. DETERMINATION BY THE COURT. SERVICE OF PROCESS. (a) The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim. If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested or as modified by the court unless the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j.

"(b) The clerk, upon the granting of the application for prejudgment remedy, shall deliver to the applicant's attorney the proposed writ, summons

on their face because they permit a prejudgment attachment without expressly requiring the applicant to post a bond or other security. The plaintiffs, Robert Sassone and Total Home Inspection Associates, Inc.,[3] applied for a prejudgment remedy in conjunction with their complaint that the defendants, Richard Lepore and Total Home Inspection, Inc.,[4] had failed to honor a covenant not to compete. Without holding an evidentiary hearing, the trial court denied the plaintiffs' application on the ground that the absence of a bonding requirement made the prejudgment remedy statutes facially unconstitutional. The plaintiffs have appealed to this court pursuant to General Statutes §§ 51-199 (b) (2) and 52-278*l*.[5] We reverse and remand for further proceedings.

and complaint for service of process. If the court does not grant the application for any reason, including the failure of the plaintiff to serve the defendant, only a summons and complaint may be issued and served. In either event, the plaintiff may alter the return date of the writ, summons and complaint or the summons and complaint, as the case may be. No additional entry fee shall be collected upon the return of such action to court unless the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j.

"(c) If a prejudgment remedy is issued and the defendant moves the court for a stay, the court may, if it determines justice so requires, stay such order if the defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay."

[3] According to the complaint, the named plaintiff, Robert Sassone, is the president and the sole stockholder of the corporate plaintiff, Total Home Inspection Associates, Inc.

[4] According to the complaint, the named defendant, Richard Lepore, is the president and sole stockholder of the corporate defendant, Total Home Inspection, Inc.

[5] General Statutes § 51-199 (b) (2) provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (2) an appeal in any matter where the superior court declares invalid a state statute or a provision of the state constitution."

General Statutes § 52-278*l* provides in relevant part: "(a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d or (2) granting or denying a motion to dissolve or modify

## I

Before considering the substantive merits of the plaintiffs' appeal, we must address the plaintiffs' legitimate grievance about the procedural manner in which the trial court disposed of their application for a prejudgment remedy. On the date specified for a hearing on their application, the plaintiffs appeared in the trial court, prepared to present evidence and witnesses in support of their application. The defendants had interposed no objection, constitutional or otherwise, to the conduct of an evidentiary hearing on the merits of the plaintiffs' application. Nonetheless, the trial court, on its own initiative, summarily summoned counsel to chambers. Without affording the parties the opportunity to be heard on either the evidentiary or the constitutional merits of the pending application, the court informed them that it would undertake an inquiry into the constitutionality of the prejudgment remedy statutes. In this apparently brief encounter, the trial court alerted counsel to its uncertainty about the constitutional validity of the prejudgment remedy statutes in the absence of a statutory requirement that an applicant post a security bond to protect against a wrongful attachment. In response, the plaintiffs thereafter offered to tender a bond in whatever amount and form the court would deem acceptable. The court took no action on that proffer.

It is understandable that the trial court would not have wanted to hold an evidentiary hearing on the plaintiffs' application for a prejudgment remedy if the court thought that such a hearing would be pointless

a prejudgment remedy under section 52-278e or (3) granting or denying a motion to preserve an existing prejudgment remedy under section 52-278g shall be deemed a final judgment for purposes of appeal.

"(b) No such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to be taken."

in the face of perceived constitutional obstacles. Once the court came to that decision, which, so far as the record shows, was not prompted by anything that transpired in this case, the court should, however, have made reasonable efforts to inform the plaintiffs, in advance of their appearance in court with their witnesses, that no evidentiary hearing would be held.

It is not understandable that the court would have undertaken to rule on the constitutionality of a state statute without affording the parties the opportunity to present argument. The constitutionally guaranteed right of access to our courts; Conn. Const., art. I, § 10;[6] expressly includes the right to "have remedy by due course of law." A "remedy by due course of law" necessarily encompasses the right to be heard. Depriving a party of a statutory right without an antecedent hearing that addresses the validity of the applicable statute violates the principles of due process; *Brein* v. *State Eclectic Examining Board,* 103 Conn. 65, 85, 130 A. 289 (1925), appeal dismissed, 273 U.S. 640, 47 S. Ct. 97, 71 L. Ed. 817 (1926); as well as this court's repeated injunction that every statute carries with it a strong presumption of constitutionality. *Calfee* v. *Usman,* 224 Conn. 29, 33, 616 A.2d 250 (1992); *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675, 587 A.2d 1014 (1991).

Viewing the procedure employed by the trial court in its totality, we agree with the plaintiffs that the court improperly deprived them of their right to be heard. Basic principles of courtesy and fairness govern the conduct of courts as well as that of litigants and their counsel. The trial court's conduct did not comport with these principles.

---

[6] The constitution of Connecticut, article first, § 10, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

## II

Although the improper manner in which the trial court disposed of the plaintiffs' prejudgment remedy application would itself be a ground for reversal of its decision, we will consider the validity of the court's constitutional ruling. The trial court's decision has cast a serious constitutional shadow over the validity of our prejudgment remedy statutes. We will, therefore, exercise our appellate discretion to review that decision because a matter of substantial public interest is at stake and because the substantive merits of the issue have been fully briefed and argued in this court. Cf. *State* v. *Ayala,* 222 Conn. 331, 341, 610 A.2d 1162 (1992).

Our consideration of the merits of the trial court's ruling is governed by three well established principles that delimit constitutional challenges to validly enacted statutes. "Because a statute carries with it a strong presumption of constitutionality, a challenger must establish its unconstitutionality beyond a reasonable doubt. *Bartholomew* v. *Schweizer,* [supra, 675]; *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *Zapata* v. *Burns,* 207 Conn. 496, 508, 542 A.2d 700 (1988). In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. *Lehrer* v. *Davis,* 214 Conn. 232, 234–35, 571 A.2d 691 (1990); *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987); *State* v. *Zach,* 198 Conn. 168, 176–78, 502 A.2d 896 (1985). In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *Bartholomew* v. *Schweizer,* supra, 675–76; *State* v. *Floyd,* supra; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989)." *Calfee* v. *Usman,* supra, 33.

Analysis of the constitutional validity of the prejudg-ment remedy statutes cannot proceed in the abstract. A claim that a statute fails, on its face, to comport with the constitutional requirements of procedural due pro-cess reflects a fundamental misunderstanding of the law of due process. Due process is inherently fact-bound because "due process is flexible and calls for such pro-cedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "The constitu-tional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum." *Lehrer* v. *Davis*, supra, 238; see also *Shawmut Bank, N.A.* v. *Valley Farms*, 222 Conn. 361, 368–69, 610 A.2d 652, cert. dismissed,    U.S.   , 113 S. Ct. 28, 120 L. Ed. 2d 952 (1992). In the absence of a constitutional challenge implicating the defendants' rights to freedom of speech, the only constitutional issue before the trial court was, therefore, whether the prejudgment remedy statutes deprived the defendants of their rights to procedural due process in the partic-ular circumstances of their case, and not merely under some possible or hypothetical set of facts not proven to exist. *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 383, 568 A.2d 431 (1990); *Husti* v. *Zuckerman Prop-erty Enterprises, Ltd.*, 199 Conn. 575, 589, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986) (same rule under article first, §§ 4 and 5, of the Connecticut constitution).

In light of the truncated nature of the proceedings in the trial court, we have no factual record against which to test the validity of the trial court's constitu-tional ruling.[7] We will, therefore, treat the plaintiffs'

---

[7] We reject the defendants' contention that the inadequacy of the rec-ord is the responsibility of the plaintiffs in the circumstances of this case. The plaintiffs had no reason to anticipate the trial court's decision to abort

appeal as if it were an appeal from a judgment following the granting of a motion to strike a complaint. In reviewing such a judgment, we take the facts to be those alleged in the complaint, and construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Kelly* v. *Figueiredo,* 223 Conn. 31, 32, 610 A.2d 1296 (1992); *Michaud* v. *Wawruck,* 209 Conn. 407, 408, 551 A.2d 738 (1988).

Accordingly, we assume the following facts as alleged in the plaintiffs' complaint. In 1991, the individual plaintiff entered into a written agreement with the defendants to purchase the assets and the business of the defendant corporation, which was engaged in conducting home inspections. The asset purchase agreement expressly allocated $33,000 of the $73,000 contract price to a covenant not to compete. Although the defendants received full payment at the time of the closing, they never executed a written covenant not to compete. In 1992, the defendants resumed their solicitation of home inspection business in competition with the plaintiffs' business.

The plaintiffs' complaint sought a variety of remedies. They claimed that they were entitled: (1) to an injunction to enforce the defendants' covenant not to compete; (2) to damages for breach of the defendants' contractual obligation to deliver a written covenant not to compete and for misrepresentations on the part of the defendants; and (3) to damages and counsel fees because of the defendants' violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b.

The issue that we must address is whether, if a trial court were to find probable cause to order a prejudg-

the scheduled probable cause hearing. We may take judicial notice of the fact that court stenographers do not ordinarily attend chamber conferences called by a trial judge.

ment remedy in light of these alleged facts, such an order would violate the defendants' rights to procedural due process. *Connecticut* v. *Doehr,* U.S. , 111 S. Ct. 2105, 2112, 115 L. Ed. 2d 1 (1991), instructs us to address this issue by using the tripartite test of *Mathews* v. *Eldridge,* 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). That test requires a consideration of "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . and . . . the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id., 335. Because increased procedural safeguards in disputes between private litigants will rarely impose a substantial fiscal or administrative burden on the government, the court in *Doehr* supplemented the *Mathews* test by requiring consideration as well of the interest of the party seeking the prejudgment remedy.

We have already acknowledged, in *Calfee* v. *Usman,* supra, 36, that an attachment in accordance with our prejudgment remedy statutes significantly affects the private interest of the owner of the attached property because, as *Doehr* held, the attachment is a cloud on the title. *Connecticut* v. *Doehr,* supra, 2113. In *Calfee* v. *Usman,* supra, 36–38, we concluded that a judicial finding of probable cause in a tort action, after an adversarial hearing pursuant to § 52-278d, provides constitutionally significant protection against an erroneous deprivation of the owner's property interests. We assumed there, and assume now, however, that further safeguards in our prejudgment remedy statutes, if constitutionally required, would not impose administrative costs that would substantially burden the operation of government.

The focus of the inquiry, therefore, is whether the absence of an express bonding requirement makes our prejudgment remedy statutes unconstitutional on their face because they deprive the property owner of a constitutionally mandated "additional or substitute procedural safeguard" under the second part of the *Mathews* test. In answering this question in the affirmative, the trial court did not engage in any balancing test. The court assigned no weight to the safeguards that stem from a judicial finding of probable cause after an adversarial hearing in accordance with § 52-278d. The court did not consider whether the facts alleged by the plaintiffs, if satisfactorily established, would substantially diminish the risk of an attachment that would subsequently be determined to have been wrongful. The court did not address the plaintiffs' interest in procuring a prejudgment remedy. The court concluded instead that, in the absence of a security bond provision, any attachment under the present statutes, regardless of the circumstances, would necessarily and unconstitutionally create a significant risk of an erroneous deprivation of the property owner's interest. We disagree with the trial court's method of analysis and with its conclusion.

Just as the requirements of procedural due process are fact-bound, as a general matter, so they are fact-bound with respect to the requirements for a constitutionally acceptable order of attachment. In voicing their constitutional concerns in *Doehr* about the absence of a bonding requirement in our statutes, Justices White, Marshall, Stevens and O'Connor were in fact considering the need for a bond in the case of an ex parte attachment in connection with a tort claim that they characterized as sufficiently doubtful so as to make "any accurate prediction [of its outcome] elusive." *Connecticut* v. *Doehr, supra*, 2117. That description does not fit all the cases in which an attachment may be ordered by the court.

In the factual circumstances of the present case, for example, the trial court, after an adversarial hearing, might find probable cause to sustain the plaintiffs' count for breach of contract because of the defendants' failure to execute and to honor their covenant not to compete. Taking into account the financial circumstances of the parties, and relying on the value that the parties placed on the covenant in their purchase contract, the court might determine that an appropriately limited attachment would require no additional procedural safeguard to protect these defendants from an unconstitutional risk of injury. Finally, the court might find that the plaintiffs had a need for immediate security to protect them against the defendants' impairment of the value of the property bought only recently from the individual defendant. The constitutional requirements of due process, as applied, might therefore not require the posting of a security bond if the trial court makes the appropriate factual findings. The trial court might, however, conclude to the contrary, determining that a security bond was appropriate to protect the defendants' property interest in light of all the circumstances including the plaintiffs' offer to post such a bond.

Our conclusion that any due process requirement for a security bond must be assessed in light of the facts of the particular case finds support in the recent case of *Shaumyan* v. *O'Neill,* 987 F.2d 122 (2d Cir. 1993). In that case, the court upheld an ex parte attachment without a security bond in the circumstances of a claim for breach of contract seeking to recover the unpaid portion of the price for goods and services that had been used to improve the defendant landowner's property. As do we, the court emphasized that the risk of a wrongful deprivation of the landowner's property depends upon the facts of the case. Id., 128–29. In other federal cases examining similar constitutional concerns, the absence or presence of a security bond has simi-

larly not been held to be a dispositive factor, by itself, in the finding of a constitutional deprivation of procedural due process. See *Reardon* v. *United States,* 947 F.2d 1509, 1519–23 (1st Cir. 1991); *Watertown Equipment Co.* v. *Norwest Bank Watertown, N.A.,* 830 F.2d 1487, 1491–93 (8th Cir. 1987), cert. denied sub nom. *Green* v. *Watertown Equipment Co.,* 486 U.S. 1001, 108 S. Ct. 1723, 100 L. Ed. 2d 188 (1988); *Jones* v. *Preuit & Mauldin,* 822 F.2d 998, 1005–1006 (1987), aff'd, 851 F.2d 1321 (11th Cir. 1988), vacated on other grounds, 489 U.S. 1002, 109 S. Ct. 1105, 103 L. Ed. 2d 170 (1989); *United States* v. *Vertol H21C Registration No. N8540,* 545 F.2d 648, 651–52 (9th Cir. 1976); *Jonnet* v. *Dollar Savings Bank of the City of New York,* 530 F.2d 1123, 1129–30 (3d Cir. 1976).

In light of the record presently before us, we might well postpone further consideration of a bonding requirement to another day. It is ordinarily imprudent to venture into constitutional waters until we are compelled to do so. "We are bound never to anticipate a question of constitutional law in advance of the necessity of deciding it [and] never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." (Internal quotation marks omitted.) *State* v. *Zach,* 198 Conn. 168, 177, 502 A.2d 896 (1985). It would therefore be preferable to await a case in which the trial court determined, factually, that it could not constitutionally grant an application for an attachment, despite the presence of probable cause, without the additional procedural safeguard of a security bond. Continuing doubts about the availability of this course of action will, however, prolong uncertainty about the constitutionality of prejudgment remedies until newly enacted legislation fills the field.[8] We will therefore address the underlying ques-

---

[8] Effective January 1, 1994, Public Acts 1993, No. 93-431, will expressly confer upon the trial court the discretionary authority to require a security bond as a condition for the issuance or the continued validity of an attachment.

tion of the authority of the trial court, in proper circumstances, to require the posting of a security bond as a condition of an attachment order.

Because the right to a prejudgment remedy of attachment is purely statutory; *Farmers & Mechanics Savings Bank* v. *Garofalo,* 219 Conn. 810, 813, 595 A.2d 341 (1991); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 582–83, 376 A.2d 60 (1977); *Carter* v. *Carter,* 147 Conn. 238, 242, 159 A.2d 173 (1960); *Munger* v. *Doolan,* 75 Conn. 656, 659, 55 A. 169 (1903); the authority of a trial court to require a security bond or other security for the protection of the property owner whose property is being attached is a question of statutory construction. The crucial language is to be found in § 52-278d (a): "If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested *or as modified by the court* . . . ." (Emphasis added.)

In the absence of any explicit statutory limitation on the power of the trial court to "modify" an application for a prejudgment remedy in whatever manner the court in its discretion deems appropriate, we hold that the court's authority encompasses the power to require whatever security is constitutionally necessary. If literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity. *State* v. *Floyd,* supra, 79; *State* v. *Champagne,* 206 Conn. 421, 437, 538 A.2d 193 (1988); *Murray* v. *Lopes,* 205 Conn. 27, 36, 529 A.2d 1302 (1987). It is not an unreasonable constitutional stretch to construe "modify" to include judicial authority that, in the appropriate circumstances, extends beyond setting the amount of the attachment and defining the property to be attached. The additional

authority that we recognize today includes the court's responsibility to require the attaching party, in appropriate circumstances, to post security against undue risks from an attachment that may subsequently be found to have been wrongful. We have often undertaken similarly expansive statutory construction to save statutes from constitutional jeopardy. See, e.g., *Shawmut Bank, N.A.* v. *Valley Farms,* supra, 372–73 (advancing the time to challenge an order for replevin); *State* v. *Floyd,* supra, 89–95 (limiting mandated assistance to police to circumstances where assistance is both necessary and reasonable); *Wright* v. *Commissioner of Correction,* 216 Conn. 220, 224–26, 578 A.2d 1071 (1990) (requiring good conduct credits in accordance with requirements of double jeopardy protection); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* supra, 705–706 (preserving personal autonomy in withdrawal of life support systems); *State* v. *Champagne,* supra, 434–37 (limiting the scope of seizures under state Corrupt Organizations and Racketeering Activity Act); *Kron* v. *Thelen,* 178 Conn. 189, 197, 423 A.2d 857 (1979) (requiring notice of decision before statutory appeal time could begin to run).

We recognize that our construction of the authority conferred by § 52-278d may be criticized on two grounds. One source of criticism is the absence of statutory guidance about the terms or conditions for a security bond, if the trial court deems such a bond to be constitutionally required. The other source of criticism is the presence, in the statute as currently drafted, of a bonding option for property owners seeking relief from a previously ordered prejudgment remedy. We find neither criticism persuasive.

The defendants first contend that a prejudgment remedy statute that confers discretion on a trial court to determine the terms of a security bond violates the requirements of procedural due process. We disagree.

Statutes in other states that include express bonding requirements do not universally spell out either the amount of the bond or the obligation that the bond secures. See, e.g., Neb. Rev. Stat. § 25-1003 (1989); N.J. Stat. Ann. § 2A:26-7 (1987); Ore. Rules of Civ. Proc. Ann. 82 A (3) (a) (1993); Wyo. Stat. Ann. § 1-15-104 (1977). The defendants have cited no authority for the proposition that due process requires express statutory standards to guide the exercise of judicial discretion to protect a property owner from an undue risk of erroneous deprivation of his property interest. We would be surprised to discover any such authority, because judicial discretion to protect the procedural rights of the parties is consistent with the fact-bound flexibility that inheres in due process protections. *Morrissey* v. *Brewer,* supra. We, therefore, reject this contention.

The defendants maintain, however, that the legislature has spoken definitively about the role of bonds elsewhere in § 52-278d, and that its definitive statement necessarily precludes our construction of § 52-278d (a). The subsection to which they point is subsection (c), which provides: "If a prejudgment remedy is issued and the defendant moves the court for a stay, the court may, if it determines justice so requires, stay such order if the defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay." According to the defendants, the legislature, having expressly required a bond to protect the interest of the attaching party, could not have intended impliedly to require a bond to protect the interest of the property owner.

The defendants are correct that "[a] statute must be considered . . . as a whole, with a view toward reconciling its separate parts in order to render an overall reasonable interpretation." *Mahoney* v. *Lensink,* 213

Conn. 548, 556, 569 A.2d 518 (1990), and cases therein cited. Bearing in mind, however, the constitutional reasons for an expansive construction of the discretion conferred on the trial court by § 52-278d (a), we are unpersuaded that the legislature intended the bonding provision in § 52-278d (c) to preclude recourse to bonding under other circumstances. The legislature did not characterize § 52-278d (c) as providing an exclusive bonding remedy, and we decline to add such a characterization. Cf. *Jones* v. *Mansfield Training School,* 220 Conn. 721, 726–31, 601 A.2d 507 (1992). It might well be inappropriate, in light of § 52-278d (c), to infer the existence of an additional bonding requirement that would impose greater burdens on property owners than the statute expressly authorizes. Such an inference would be inconsistent with the understanding that attachment statutes are ordinarily to be strictly construed. *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 626, 594 A.2d 464 (1991). It is not inappropriate, by contrast, to infer the existence of an additional bonding requirement that diminishes the property owner's exposure to the risk of injury from a wrongful attachment. In the absence of an inconsistency, either expressed or implied, between these two bonding requirements, we are not persuaded that the rules of statutory construction compel the drawing of a negative inference from the text of § 52-278d (c) for the text of § 52-278d (a).

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion CALLAHAN, BORDEN, PALMER and SANTANIELLO, Js., concurred.

BERDON, J., with whom KATZ, J., joins dissenting. The majority concedes and I agree that the prejudgment remedy statutes, General Statutes §§ 52-278c and

52-278d,[1] would be constitutionally deficient absent a provision allowing the trial judge to condition a prejudgment remedy on the furnishing of a security bond. *Calfee* v. *Usman*, 224 Conn. 29, 39–43, 616 A.2d 250 (1992) (*Berdon, J.*, dissenting). The majority refers to No. 93-431 of the 1993 Public Acts,[2] which grants to the trial court the discretionary authority to provide for such a bond.[3] This newly enacted legislation, however, will not be effective until January 1, 1994. Through statutory construction, the majority attempts to repair the current §§ 52-278c and 52-278d by incorporating a bond provision. Unfortunately, the prejudgment remedy statutes simply do not permit such a construction.

In order to reach its conclusion that the current statutes give the trial court authority to require a security bond or other security, the majority focuses on the trial court's current right to modify the plaintiffs' request for the prejudgment remedy. Section 52-278d (a) provides in part: "If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested *or as modified by the court.*" (Emphasis

---

[1] See footnote 2 of the majority opinion.

[2] Whether No. 93-431 of the 1993 Public Acts passes constitutional muster is not currently before this court.

[3] Public Acts 1993, No. 93-431, § 1 (g) provides: "A defendant may request a hearing to contest the application for a prejudgment remedy, assert any exemption or make a request concerning the posting or substitution of a bond. The hearing may be requested by any proper motion or by return to the Superior Court of a signed claim form that indicates, by the checking of the appropriate box on the claim form, whether the claim is an assertion of a defense, counterclaim, set-off or exemption, an assertion that any judgment that may be rendered is adequately secured by insurance, an assertion that the amount sought in the application for the prejudgment remedy is unreasonably high, a request that the plaintiff be required to post a bond to secure the defendant against any damages that may result from the prejudgment remedy or a request that the defendant be allowed to substitute a bond for the prejudgment remedy." See also Public Acts 1993, No. 93-431, §§ 1 (e) and 2 (a).

added.) The court's authority to require a "security bond" simply cannot be read, either explicitly or implicitly, into the term "modify." This court is " 'bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained.' . . . Nor can we engraft language not clearly intended by its enactment onto legislation." (Citation omitted.) *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.,* 207 Conn. 639, 645, 541 A.2d 869 (1988).

If the legislature intended to authorize the court to condition a prejudgment remedy on the posting of a bond, it would have specified that authority in the statutory language. In § 52-278d (c), for instance, the legislature specifically authorized the trial court to order a stay following an order of prejudgment remedy "if the defendant posts a bond." See also General Statutes § 52-278e (b) (2). "Although this court has the final word on the interpretation of our state statutes, there is a 'higher authority'—that is, the constitution of the state of Connecticut. Article second of the Connecticut constitution provides in part: 'The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.' By placing a construction on this statute that is contrary to its plain and unambiguous text, the majority encroaches on that which is solely reserved to the legislative branch of our government. 'In the field of legislation, the legislature is supreme. Courts must apply legislative enactments according to their plain terms.' *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276 (1956)." *Jones* v. *Mansfield Training School,* 220 Conn. 721, 737–38, 601 A.2d 507 (1992) (*Berdon, J.,* dissenting).

Furthermore, the majority acknowledges that it is sending the matter back to the trial court with the expectation that the trial court will act in accordance with its conclusion that the trial court has the authority to require a bond; nevertheless, this court has not articulated any standard upon which the trial court is to predicate its decision as to whether a bond should be required, the amount of the bond, and the condition of the bond.[4] Rather than making order out of a difficult situation, the majority's opinion will necessarily cause confusion and conflicting rulings in the trial court.

I would affirm the decision of the trial court. Accordingly, I respectfully dissent.

---

[4] In No. 93-431, § 2, of the 1993 Public Acts, the legislature addressed these issues as follows: "(d) At any hearing on an application for a prejudgment remedy held pursuant to this section or upon motion of the defendant at any time after the granting of such application, the defendant may request that the plaintiff post a bond, with surety, in an amount determined by the court to be sufficient to reasonably protect the defendant's interest in the property that is subject to the prejudgment remedy against damages that may be caused by the prejudgment remedy. If the court grants the defendant's request, the bond shall provide that if judgment in the matter is rendered for the defendant or if the prejudgment remedy is dismissed or dissolved, the plaintiff will pay to the defendant damages directly caused by the prejudgment remedy.

"(e) In determining whether to grant a request for a bond and, if granted, the amount of the bond to be set, the court shall consider the nature of the property subject to the prejudgment remedy, the methods of retention or storage of the property and the potential harm to the defendant's interest in the property that the prejudgment remedy might cause.

"(f) Notwithstanding the provisions of subsections (d) and (e) of this section, the court shall waive any bond or lower the amount of any bond ordered pursuant to subsection (e) of this section, upon request for such a waiver by an indigent plaintiff, if, after hearing and a consideration of the probability that a judgment will be rendered in the matter in favor of the plaintiff, the potential harm to the defendant's interest in the property that the prejudgment remedy might cause, and the likelihood that the defendant will dissipate such property prior to judgment, the court finds that the plaintiff should be entitled to the protections of a prejudgment remedy."