[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE OF BANKBOSTON
The defendant BankBoston ("the bank") has moved to strike both of the counts of the plaintiff's complaint that are directed against it. In the first count, the plaintiff SCP Corporation alleges that the bank breached its obligations under a contract CT Page 3675 titled Sale and Assignment Agreement dated June 19, 1992. In the second count, the plaintiff alleges that BankBoston converted to its own use an asset to which the plaintiff was entitled to ownership under the terms of the contract. The bank has also moved to strike the plaintiff's claim for consequential damages with regard to the first count. It has challenged the second count on the additional ground that a claim for conversion is barred by the statute of limitation.
In other counts of the complaint, the plaintiff SCP Corporation has brought claims against another defendant, WHTR Real Estate Limited partnership ("WHTR"). Those claims are the subject of a motion to strike that has been decided in a separate ruling.
Procedural history
The plaintiff commenced this action in January 1998 in a one count complaint seeking damages against both defendants. The plaintiff revised the complaint and the bank filed an answer to the revised complaint. After the success of a motion to strike filed by WHTR, the plaintiff filed an amended complaint on June 24, 1998. The bank filed a motion to strike the counts addressed to it on February 24, 1999, several weeks after the filing of a motion to strike by WHTR.
Timeliness of motion
The plaintiff urges the court to deny BankBoston's motion as untimely. Practice Book § 10-61 allows a party to plead to an amended pleading within ten days "or such other time as . . . the judicial authority may prescribe." This case was initially transferred to the Complex Litigation Docket in Norwich, where a request to revise filed by WHTR was adjudicated. The case was then transferred to Waterbury at the request of counsel, based on geographical hardships for counsel based in Bridgeport and New Haven. At the case management conference conducted by the undersigned on January 25, 1999, a briefing schedule for the WHTR motion to strike was established by the court. The final brief was due, pursuant to that schedule, on March 2, 1999. While BankBoston's motion to strike was filed long after the amendment of the complaint, the process of the transfer of the case left it in limbo for a considerable period. The motion to strike was, at any rate, filed while the issue of the sufficiency of the complaint was before this court, and the court therefore CT Page 3676 exercises its discretion to allow this defendant's motion to strike, which raises some of the same issues as WHTR's motion.
Standard of review
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Novametrix Medical Systems,Inc. v. BOC Group. Inc., 224 Conn. 210, 214-215 (1992); Ferrymanv. Groton, 212 Conn. 138, 142 1989); Practice Book § 10-39.
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. Bohan v. Last, 236 Conn. 670, 675 (1996);Sassone v. Lepore, 226 Conn. 773, 780 (1993); Novametrix MedicalSystems, Inc. v. B0C Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." Forbes v. Ballaro,31 Conn. App. 235, 239 (1993). Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v.CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v. New England LogHomes, Inc., 4 Conn. App. 132, 134-35, cert. dismissed,197 Conn. 801 (1985).
Breach of contract claim (First Count)
In the first count of the amended complaint, the plaintiff alleges that the bank had an obligation to assign to SCP its claim for a deficiency judgment in a mortgage foreclosure action captioned Bank of Boston Connecticut v. Sursum Corda Properties, et al., Docket No. CV 91-325871-S, which was maintained in the New Haven judicial district. (Bank of Boston Connecticut is a prior name of the defendant bank.) The plaintiff alleges that the obligation was set forth in a contract titled Sale and Assignment Agreement ("the Agreement"). The plaintiff annexed a copy of the Agreement as Exhibit A to the complaint and incorporated it by reference in the complaint "as though fully set forth." (Amended Complaint, paragraph 16). SCP alleges that BankBoston breached the Sale and Assignment Agreement "and the duty of good faith and fair dealing implied therein" in four respects. Though these various claims of breach are included in a single count, they are CT Page 3677 alleged as distinct breaches in Paragraph 47(a)-(d) of the First Count. In summary the claims are that the bank breached the agreement
 — (a) by assigning to a predecessor of WHTR in the fall of 1994 the note and mortgage on which the foreclosure action and the prospect of a deficiency judgment were based;
 — (b) by disclosing the Agreement to the purchaser in connection with the sale of the Sursum Corda loan documents, in violation of a confidentiality provision in that agreement;
 — (c) by refusing to convey the deficiency claims against Sursum Corda and the guarantors of the loan to SCP after failing to act in good faith with regard to its obligations stated in the Agreement;
 — (d) by unreasonably delaying prosecution of the foreclosure action so as to deprive SCP of a substantial part of the benefits set forth in the Agreement.
Most of the numbered paragraphs of Count One contain characterizations of the provisions of the Agreement and the plaintiff's explanations of its goals and its view of the bank's reasons for entering into an agreement in the particular form that the Agreement took. The plaintiff asserts that the terms of the Agreement required the bank to convey the deficiency claim to it without regard to the time that such a claim came into existence, that is, regardless of the date of taking title to the mortgaged property. The plaintiff asserts that an implied covenant of good faith and fair dealing obligated the bank to pursue the foreclosure action in a manner that would secure a judgment of foreclosure against Sursum and the guarantors before March 31, 1993, so that the plaintiff would have the prospect of obtaining the right to pursue deficiency claims as value for its payment of $250,000.
The bank claims that the facts alleged by the plaintiff do not constitute a breach of the actual terms of the Agreement because the Agreement did not obligate the bank to do what the plaintiff alleges to have been its duty under the Agreement.
Construction of the terms of a contract is a matter of law, and "[w]here there is definitive contract language, the CT Page 3678 determination of what the parties intended by their contractual commitments is a question of law." Pesino v. Atlantic Bank of NewYork, 244 Conn. 85, 92 1998). If, as the bank maintains, the text of the Agreement does not obligate it to do what the plaintiff alleges was its, obligation, then the plaintiff has not alleged a breach of contract, and thus has not set forth facts constituting a cause of action.
On the second page of the Agreement, which has been fully incorporated into the complaint, as mentioned above, the parties list the obligations they are undertaking. The bank, referred to as the "Assignor" under the Agreement, obligates itself to sell, and the plaintiff, referred to as the "Assignee," obligates itself to purchase "in each case on and as of the Closing Date, all of the Assignor's right, title and interest, in, to [the Sursum Corda loan documents], all upon the terms and conditions set forth herein."
The terms and conditions are set forth in paragraph 1(c): "[t]he purchase price for the Closing (the "Purchase Price") shall be equal to (i) if the Closing Date occurs before December 15, 1992, $2,250,000 and (ii) if the Closing Date occurs on or after December 15, 1992 but on or before March 31, 1993, $3,250,000; provided, that, if the closing occurs after the Title Date, the Purchase Price shall be equal to $250,000." (Emphasis in original.)
The Agreement required the plaintiff to pay a deposit of $250,000. The Agreement states that "[t]he Assignee acknowledges and agrees that the Deposit is non-refundable and shall remain the property of the Assignor whether or not the Closing occurs hereunder."
The "Closing Date" is defined at paragraph 1(b) of the Agreement as "that date which is the earlier to occur of (i) March 31, 1993 and (ii) fifteen (15) days following the date (the `Title Date') on which the Assignor acquires fee simple absolute title to the Property, whether pursuant to its foreclosure action or otherwise; provided, however, the Assignee acknowledges and agrees that if the Closing occurs on or after the Title Date, the Closing shall be limited to the sale and assignment of the Assignor's deficiency claims against the Borrower and the Guarantors under the applicable Loan Documents and the Assignee shall have no right, title or interest of any kind whatsoever in or to the Property." (Emphasis in original.) CT Page 3679
Paragraph 1(b) of the Agreement ends with the following pivotal provision: "If the closing does not occur on or before the earlier of the dates set forth above, then, except as set forth in Paragraph 18 hereof, all of the rights and obligations of the parties hereto under this Agreement shall terminate immediately without notice or action of any kind whatsoever." The "dates set forth above" are "(i) March 31, 1993 and (ii) fifteen (15) days following the date on which the Assignor acquires [title to the mortgaged property]." Paragraph 18, the exception to the termination provision, provides that the parties will keep the terms of the Agreement confidential. No provision of the contract obligates the bank to make any transfer to the plaintiff after March 31, 1993, and the text of paragraph 4(b) specifically limits the remedy for breach of that provision to actual damages, not extension of the option.
The plain language of the contract thus created the following rights and obligations: The plaintiff agreed to pay a non-refundable portion of the purchase price in the amount of $250,000 in order to be able to have the right to purchase, at its option, either (1) the loan documents, which it could then have enforced itself against the mortgagee and guarantor, for the price of $2,250,000 if it closed on the transaction before December 15, 1992, or for $3,250,000 if it closed before March 31, 1993, or (2) the banks claims for deficiency (that is, claims pursuant to Conn. Gen. Stat. § 49-14 to the difference between the value of the property whose title it acquired and the amount due under the note), if the bank had already taken title to the mortgaged property before March 31, 1993.
The plaintiff does not allege that it paid the purchase price applicable to either time frame in option (1). The plaintiff alleges, however, that the bank deprived it of its other option, that is, obtaining the deficiency claim, by failing to act in good faith with regard to its obligation to use its best efforts to obtain a judgment and convey the deficiency claim to the plaintiff before the arrangement ended on March 31, 1993. The plaintiff relies on paragraph 4(b) of the Agreement, which states, among the agreements and covenants made by the bank "to induce the assignee to enter into this Agreement," the agreement to "use, to the extent of its legal and contractual ability, best efforts to . . . cause the `Law Day' of the obligor in the Foreclosure Proceedings to occur no earlier than December 15, 1992" and in case of a judgment entering sooner, to use its best CT Page 3680 efforts to extend the law day, but not after March 31, 1993. The bank argues that this provision of the agreement should be disregarded because another clause retained for the bank discretion to discontinue the foreclosure proceedings. Since principles of construction of contracts require clauses to be harmonized so that each can be given effect, these clauses can be construed such that paragraph 4(b) applies if, as is alleged to have been the case, the bank in fact continued the foreclosure action and did not take the option of abandoning it.
As the Supreme Court has observed, "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gupta v. New BritainGeneral Hospital, 239 Conn. 574, 598 (1996); Warner v. Konover,210 Conn. 150, 155 (1989).
By alleging that the bank and its officials delayed the foreclosure proceedings in order to avoid entry of judgment before March 31, 1993, and thus avoid having to convey the deficiency claim to the plaintiff as value for its nonrefundable $250,000 payment, the plaintiff has sufficiently alleged a breach of the implied duty of good faith and fair dealing. That duty, as it relates with the provision of paragraph 4(b) regarding use of "best efforts" action on a schedule that would achieve an opportunity for the plaintiff to obtain the deficiency claim, as well as the option to purchase the loan documents pre-judgment, states a cause of action. By alleging that it has been damaged, the plaintiff undertakes the burden of proving that good faith efforts by the bank would have produced a deficiency claim before March 31, 1993.
The plaintiff has sufficiently alleged a cause of action for breach of the bank's agreements to proceed in the manner described at paragraph 4(b) and breach of an implied covenant that the bank would conduct itself fairly and not devalue the plaintiff's rights under the agreement by the pace at which it conducted the foreclosure action. The plaintiff has also alleged facts that would support a cause of action for breach of the confidentiality agreement, which did not expire on March 31, 1993. The plaintiff has not, however, alleged facts that would support the conclusion that the bank had a duty to convey the deficiency claims independent of its obligations stated at implied in paragraph 4(b), nor that it had any duty to convey such claims to the plaintiff after March 31, 1993. CT Page 3681
The motion is strike is denied as to the claims set forth at paragraphs 47(b) and (d). It is granted as to the claims set forth at paragraphs 47(a) and (c).
Claim for consequential damages
Though the plaintiff has not specifically listed consequential damages as an element of damages in its prayer for relief, it has set forth at paragraph 48 of the complaint its factual averments of the damages it claims to have sustained. The bank characterizes these claims as claims for consequential damages and moves to strike them on the ground that the contract limits recovery for a breach based on paragraph 4(b) of the Agreement to actual damages.
Paragraph 4(b) provides, in pertinent part, as follows: "the Assignee acknowledges and agrees that, in the event of any breach by the Assignor of its obligations hereunder [that is, any breach of its obligations pursuant to paragraph 4(b) to use its best efforts to cause the law day for Sursum Corda to occur between December 15, 1992 and March 31, 1993] the Assignee shall be entitled only to actual money damages (as opposed to consequential or punitive damages) incurred by the Assignee as a result of such breach."
 At paragraph 48 of its amended complaint, the plaintiff lists the following damages:
 (a) the value of the deficiency claims against Sursum and the Guarantors;
 (b) the opportunity to purchase all claims arising under the Loan Documents during the period between the entry of judgment and the vesting of title in the Second Foreclosure Action, which in turn would have enabled plaintiff to acquire the property, to construct and operate the Facility on the Property, and otherwise to develop and deal with the Property, all of which would have generated value of several million dollars for plaintiff;
 (c) the opportunity to pursue the economic benefits flowing from the relationship with Yale under the Yale Contract; and
(d) the opportunity to deal with the Bank as owner of the CT Page 3682 Property after the vesting of title rather than a speculator such as WHBB and WHTR.
The plaintiff argues that all of the damages it claims are "actual" damages within the language of paragraph 4(b). To construe the contract term cited above in that way would be to remove any meaning from the distinction made between "actual" and "consequential" damages. "Actual damages" is commonly meant in Connecticut law to mean the value of the asset that was the subject of the contract, while "consequential damages" are the losses resulting from the deprivation of that asset. WaterburyPetroleum Products. Inc. v. Canaan Oil Fuel Co., 193 Conn. 208,222-23 (1984). The "opportunities" listed in sections (b) — (d) above are consequential damages, losses claimed to have flowed from the failure of the bank to use its best efforts to cause a deficiency claim to be in existence before March 31, 1993.
In view of the express exclusion in the contract for claims for consequential damages arising from a breach based on paragraph 4(b), the claims for damages at paragraph 47(b) through (d) are stricken.
Conversion claim
The bank has moved to strike the second count of the complaint, in which the plaintiff alleges that the same conduct that constituted a breach of contract constitutes conversion. Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owners rights." Aetna Life Casualty Co. v.Union Trust Co., 230 Conn. 779, 790 (1994). The plaintiff does not claim that it was ever the owner of the deficiency claim. Instead, it claims that it should have been the owner, but for the bank's alleged breach of contract. Putting aside the doubtful proposition that a party without a liquidated right to an asset can maintain a cause of action for conversion, it is evident from the face of the complaint that a claim based on the tort of conversion is time-barred.
The conduct that the plaintiff characterizes as a conversion is the sale of the loan documents to another party in September 1994. The plaintiff commenced its action in January 1998, a time not within the three years allowed by Conn. Gen. Stat. §52-577 for assertion of a tort claim. In Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 162 (1983), the Supreme Court ruled CT Page 3683 that a demurrer (the precursor to a motion to strike) is properly granted where the allegations of the complaint allege conduct that occurred beyond the time period imposed as a limitation on the commencement of the action, except where the complaint alleges conduct that would toll the statute of limitation. The plaintiff did not commence its action alleging the tort of conversion within three years of September 1994, and it has not alleged any conduct that would toll the running of the limitation period. The second count of the amended complaint is therefore stricken as time-barred.
Conclusion
The motion to strike is granted as to the breach of the contract claim alleged at paragraphs 47(a) and (c) of the first count. The motion is granted as to the claims for consequential damages, specifically, the claims set forth at paragraph 48(b), (c), (d). The motion is granted as to the second count of the amended complaint. The motion is otherwise denied.
Beverly J. Hodgson Judge of the Superior Court