[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendant, Comprehensive Information Services, Inc. ("CIS"), has moved to strike both counts of the plaintiff's two-count complaint. The plaintiff, Robert Feldman, alleges in the first count that the defendant was hired to make a background report on him to his employer, and that in May 1999, the defendant falsely reported that he had been convicted of CT Page 8971 one or more felonies. He alleges that he lost his job as an investment executive because of this false report.
In the first count of his complaint, the plaintiff alleges that the defendant made the false report negligently and/or with reckless disregard of its accuracy:
 10. CIS either knew that the statements in the CIS report were false; or acted in reckless disregard of the truth or falsity of the statements in the CIS report; or acted negligently in failing to ascertain the truth or falsity of the statements in the CIS report.
The defendant asserts that the first count does not state a cause of action because the federal Fair Credit Reporting Act, 15 U.S.C. § 1681
et seq., preempts this claim and offers the exclusive source of remedy.
In the second count of the complaint, the plaintiff alleges that the defendant's provision to the employer of the report that falsely stated that the plaintiff had felony convictions constituted a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), 42-110a et seq. The defendant asserts that the plaintiff's allegations do not identify an unfair trade practice and that the plaintiff therefore has not stated a cause of action for a violation of CUTPA.
At oral argument, the defendant acknowledged that it had misquoted the text of the Fair Credit Reporting Act in its brief by suggesting that the Act required a plaintiff to plead and prove "actual malice," when the statute refers only to "malice." The court offered counsel for the parties an opportunity to brief the issue of federal preemption and allowed an additional two weeks for submission of such briefs. Neither party filed a supplemental brief.
Standard of Review on Motion to Strike
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Vacco v. Microsoft Corp., 260 Conn. 59, 65 (2002); Sherwood v.Danbury Hospital, 252 Conn. 193, 213 (2000); Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-215 (1992); Ferryman v.Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. ATC Partnership v. Windham 251 Conn. 597, 603, cert. denied, 530 U.S. 1214 (1999); Dodd v. Middlesex Mutual Assurance Co., CT Page 8972242 Conn. 375, 378 (1997); Napoletano v. CIGNA Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, cert. denied, 520 U.S. 1103
(1990).
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff.Vacco v. Microsoft Corp., supra, 260 Conn. 65; Gazo v. Stamford,255 Conn. 245, 260 (2001); Bohan v. Last, 236 Conn. 670, 675 (1996);Sassone v. Lepore, 226 Conn. 773, 780 (1993); Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." Forbes v. Ballaro, 31 Conn. App. 235, 239 (1993). Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v. NewEngland Log Homes, Inc., 4 Conn. App. 132, 134-35, cert. dismissed,197 Conn. 801 (1985); however, very broad allegations have been held to be adequate to survive a motion to strike. See Bohan v. Last, supra,236 Conn. 675.
Does the federal Fair Credit Reporting Act preempt the plaintiff's claimfor libel?
The federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information in accordance with the requirements of this [Act]." 15 U.S.C. § 1681 (b). The Act applies to reports prepared for employment purposes. 15 U.S.C. § 1681
(d).
The defendant asserts that § 1681h(e) of the Fair Credit Reporting Act, which is titled "Limitation of Liability" preempts any state common law claims based on reports by investigators who are subject to the provisions of the Act. That section provides:
Except as provided in sections 1681n and 1681o . . . no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any CT Page 8973 user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h or 1681m, except as to false information furnished with malice or willful intent to injure such consumer.
The defendant asserts that the Act "implicitly provides for the preemption of state claims of common law libel." While the provision set forth above limits common law causes of action to those circumstances in which a plaintiff pleads and proves that the reporting agency reported "false information furnished with malice or willful intent to injure" the person who is the subject of the report, the Act does not provide that state common law claims that do allege these elements are preempted.
Preemption of an area of regulation by a federal statute may be implied if that result, though not explicitly stated in a federal enactment, is implicitly contained in its structure and purpose. Barnett Bank of MarionCounty, N.A. v. Nelson, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237
(1996); Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 98,112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).
Scrutiny of the structure and purpose of the Fair Credit Reporting Act does not support a conclusion that preemption of common law libel claims was intended. The provision quoted above establishes an exception from the Act's bar on common law claims for those claims that are based on the provision of false information "furnished with malice or willful intent to injure."
The legislative history supports the conclusion that Congress intended to allow exactly the kind of claims that this exception describes. In the Senate debate on the 1970 amendment, Public Law 91-508, Title VI, § 601, 84 Stat. 1131, which amended the Act to add, among other provisions, § 1681h(e), New York's Senator Jacob Javits asked the legislation's sponsor, Senator Edward William Proxmire, whether the bill precluded civil libel suits alleging malice:
 Mr. JAVITS. Suppose the information [in the credit report] is malicious. Is there anything that prevents the individual from seeking redress in a civil suit? I realize the good faith problem which is involved, but would the bill cut off the right to penalize the reporting agency in the event of malice?
Mr. PROXMIRE. If he feels it is malicious. The reporting agency could still get a waiver in which it CT Page 8974 could not be held that it was malicious until he could prove it. The burden of proof would be on the complainant, on the consumer. But he can bring the suit.
 Mr. JAVITS. There is nothing in the bill that exempts the agency from malicious conduct? There is some analogy here, of course, to the New York Times case in Mississippi.
Mr. PROXMIRE. That is correct.
 Mr. JAVITS. I just want to be positive that we are not giving some kind of license to the reporting agency to which it is not entitled.
 Mr. PROXMIRE. Let me read the section so that we will be perfectly clear [He reads the text of what is now § 1681h(e).]
 I would think that that exception clause would meet the point made by the Senator from New York.
 Mr. JAVITS. So care has been taken to preserve the right of action for the consumer.
 Mr. PROXMIRE. That provision was patterned after the New York State law.
 Mr. JAVITS. Yes. Care has been taken to protect the right of action where it is premised on non-good-faith reporting.
Mr. PROXMIRE. The Senator is correct; malice.
 Mr. JAVITS. Nothing in section 616 or 617 negates that preservation of right in the consumer. Is that right?
 Mr. PROXMIRE. No. That gives the consumer the right to file his complaint.
Mr. JAVITS. So that the civil liabilities of section 616 and section 617 do not prevent the consumer from suing and recovering, if he can prove that false information was taken or was furnished with malice or CT Page 8975 willful intent to injure him.
 Mr. PROXMIRE. No. On page 23 there is spelled out how he can do it. It seems to me this would strengthen the consumer's position and it would not and does not intend to diminish it.
 Mr. JAVITS. And certainly it is not intended to cut off his right of recovery, even without the limitation in section 616 and section 617, if he can prove what the Senator read, that it was false information furnished with malice or willful intent.
Mr. PROXMIRE. That is correct.
 Mr. JAVITS. That is very important because I realize the reporting agencies get something out of this. They get a limitation of liability; the right to publish certain information, as in periodicals not notifying the consumer until he is hurt.
 Mr. PROXMIRE. That is the quid quo pro for full disclosure.
 Mr. JAVITS. I understand. I have been in a few businesses myself. But when a really outrageous case is involved we do not want to hobble the injured party at all; if anybody is maliciously harmed he would have recourse.
Mr. PROXMIRE. I thank the Senator for his help.
115 Cong. Rec. 33411-12 (November 6, 1969).
No federal court has ruled that the Act preempts common law actions in which a plaintiff asserts that the reporting agency reported false information with malice or willful intent to injure the plaintiff. While plaintiffs have lost claims on some occasions when their proof failed to support their allegations of malice or willful intent to injury, seeCousin v. Trans Union Corp, 246 F.3d 359 (5th Cir.), cert. denied,122 S.Ct. 346 (2001); Rhodes v. Ford Motor Credit Co., 951 F.2d 905 (8th
Cir. 1991); Bruce v. First U.S.A. Bank, 103 F. Sup.2d 1135, 1146
(2000), such outcomes do not support a claim of preemption.
The defendant asserts that the plaintiff has not alleged that it issued the report containing the allegedly false information with malice or CT Page 8976 willful intent to injure him and that his pleading therefore fails to come within the exception provided in § 1681h(e). In debating the scope of protection from libel suits that the Fair Credit Reporting Act provided to reporting agencies, the senators quoted above referred to the standard announced in New York Times v. Sullivan, 376 U.S. 254 (1964), a case in which the issue was the scope of the privilege provided to speakers by the First Amendment. The standard set forth in New York Times
is that a statement is made with malice if the speaker made the statement "with knowledge that it was false or made with reckless disregard of whether it was false or not." New York Times v. Sullivan, supra,376 U.S. 280.
Federal courts have not suggested that reporting agencies have a greater privilege to publish false information than people exercising individual rights of free speech derived from the Constitution; however, they have applied to § 1681h(e) the same definition of "malice" that has been applied in the context of libel. In so doing, the Court of the Appeals for the Eighth Circuit noted that the qualified privilege under the Act is not based upon a constitutional privilege as in New YorkTimes; rather "[t]he qualified privilege under the Act is purely statutory and, as previously stated, is the "quid pro quo' for full disclosure. We cite the New York Times standard as an example of a type of malice necessary to overcome a qualified privilege. The [jury] instructions should define malice and willful intent to injure in terms which explain what is necessary to overcome the qualified privilege given by the statute." Thornton v. Equifax, Inc., 619 F.2d 700, 705 (8th
Cir.) cert denied, 449 U.S. 835 (1980). In Bruce v. First U.S.A. Bank, supra, 203 F. Sup.2d 1146, the District Court stated that to prove malice a plaintiff must show that the reporting agency possessed knowledge that the information was false and reported it anyway or had doubts about the veracity of the information and reported it anyway.
The plaintiff's claim, quoted above, is stated in the alternative: the defendant knew the information was false and furnished it to the plaintiff's employer anyway or it was negligent in failing to ascertain the truth of the statements made in its report. The first formulation is sufficient to allege malice, given the standard applicable to motions to strike, and thus to state a cause of action within the exemption stated in § 1681h(e). The second formulation, that is, that the defendant "acted negligently in failing to ascertain the truth or falsity of the statements made in the report" does not allege either malice or willful intent to injure the plaintiff, and it barred by the Act.
Has the plaintiff stated a claim for violation of CUTPA?
In the second count of his complaint, the plaintiff alleges: CT Page 8977
 13. In order to produce the background report on Mr. Feldman, CIS obtained certain criminal history information relating to Mr. Feldman.
 14. Pursuant to Connecticut General Statutes §§ 54-142g
to 54-142q, the obtaining of this criminal history information by CIS was illegal and in violation of said statutes.
The standard for determining whether an act or practice constitutes a CUTPA violation is the test, known as the "cigarette rule," recognized by the Federal Trade Commission in enforcing the federal statute on which the CUTPA is modeled:
 (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.
Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591 (1995); quoting Conaway v. Prestia, 191 Conn. 484, 492-93 (1993); A-G Foods,Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215 (1990).
In Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 729 (1995), the Supreme Court ruled that an isolated, inadvertent violation of a standard set in a legislative enactment did not violate CUTPA, suggesting that not every error constitutes a business policy or practice.
The plaintiff has not alleged any facts about what he claims the defendant did to obtain criminal history information about him or how its actions violated Conn. Gen. Stats. §§ 54-142g through 54-142q, which are part of a chapter of the Connecticut General Statutes, Chapter 91a, titled "Security and Privacy of Criminal Records." The cited statutes concern the compilation and release of various kinds of arrest and conviction records by law enforcement agencies. Section 54-142k provides at subsection (b) that "conviction information" shall be available to the public for any purpose; but that records concerning "nonconviction information," such as erased records or records of youthful offender status, are not to be made available other than to the person who is the subject of the records, that person's legal counsel, and entities CT Page 8978 described in the statute. While most of the provisions in this chapter govern the conduct of law enforcement agencies, § 54-142k makes it a felony to obtain criminal history information by falsely representing one's self to be the subject of the information requested. Under the broad allegation of his complaint, the plaintiff could present evidence that the defendant obtained false information about him in a manner that violated the public policy expressed in Chapter 91a, and that the defendant had a business practice of obtaining nonconviction information by improper means.
Conclusion
The motion to strike the first count is granted to the extent that the plaintiff alleges that the defendant is liable for negligently failing to ascertain the truth or falsity of the statements made in its report to his employer; it is otherwise denied as to that count. The motion to strike the second count is denied.
 Beverly J. Hodgson Date Judge of the Superior Court