******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* PAUL DAVIS
## (AC 37582)

Alvord, Mullins and Beach, Js.*

*Syllabus*

Convicted of accessory to murder, conspiracy to commit murder and attempt to commit murder, the defendant appealed. The defendant's conviction stemmed from his participation in a drive-by shooting in which two passengers in a car he was driving shot at a group of children on a street corner, killing F and seriously wounding another. This court affirmed the judgment and, thereafter, the defendant filed a petition for certification with our Supreme Court, which granted the petition and remanded the matter to this court to consider the defendant's unpreserved claim that the trial court committed plain error by erroneously instructing the jury that the state did not need to prove that the defendant had the specific intent to kill F in order to find him guilty of accessory to murder. On remand, *held* that the defendant's claim failed under a plain error analysis because it was clear that the court correctly instructed the jury that it did not have to find a specific intent to kill a particular victim in order to find the defendant guilty of accessory to murder; that court properly instructed the jury that to find the defendant guilty, it had to find that he had the specific intent to kill, but that it did not have to find that he intended to kill F specifically, as the murder statute (§ 53a-54a) on its face allows for transferred intent for the crime of murder such that, when a person engages in conduct with the intent to kill someone, there can be a separate count for every person actually killed, and under the circumstances here, the court's instructions were correct in law and were tailored to the evidence presented, which showed that the defendant and his cohorts had no particular victim in mind when they set out to engage in a retaliatory killing and fired more than seventeen bullets at the group of children on the street corner.

Argued September 26—officially released November 28, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of accessory to capital felony, accessory to murder, conspiracy to commit murder and attempt to commit murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Dewey, J.*; verdict and judgment of guilty of accessory to murder, conspiracy to commit murder and attempt to commit murder, from which the defendant appealed; thereafter, this court affirmed the judgment; subsequently, the defendant filed a petition for certification to appeal with our Supreme Court, which granted the petition and remanded the matter to this court to consider the defendant's claim. *Affirmed.*

*Mary A. Beattie*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. This case returns to us on remand from our Supreme Court; see *State* v. *Davis*, 325 Conn. 918, 163 A.3d 618 (2017); with direction to consider the claim of plain error raised by the defendant, Paul Davis, in light of its decision in *State* v. *McClain*, 324 Conn. 802, 155 A.3d 782 (2017). We now consider the defendant's appeal from the judgment of conviction of accessory to murder in violation of General Statutes §§ 53a-54a (a) and 53a-8 (a),[1] in which he claimed that the trial court committed plain error by improperly instructing the jury that it was not necessary for the state to prove that the defendant intended to kill the victim to find him guilty of accessory to murder.

We conclude that the trial court did not instruct the jury that it was not necessary for the state to prove the defendant's intent to kill. Rather, the trial court properly instructed the jury that the state was not required to prove that the defendant intended to kill the specific victim that was killed. Accordingly, we affirm the judgment of the trial court.

The following facts, as set forth in our first *Davis* opinion; *State* v. *Davis*, 163 Conn. App. 458, 136 A.3d 257 (2016), remanded in part, 325 Conn. 918, 163 A.3d 618 (2017); are relevant here. "The defendant was a member of a gang in Hartford. On May 28, 2006, in retaliation for a shooting that occurred earlier that day in which another member of the defendant's gang was shot, the defendant, Ackeem Riley and Dominique Mack discussed conducting a drive-by shooting in the Nelton Court area of Hartford. The trio had no specific victim intended.

"The defendant drove himself, Riley and Mack toward the Nelton Court area in a car he had borrowed. Riley was armed with a nine millimeter Glock handgun. Mack was armed with a nine millimeter Taurus. As the defendant drove, he, Riley and Mack saw a group of children at the corner of Elmer and Clark Streets. Riley and Mack fired at least seventeen shots from their handguns at the group, striking two boys. One of the victims, Kerry Foster, Jr., a fifteen year old boy, was hit by five bullets, resulting in his death. The other victim, Cinque Sutherland, a fourteen year old boy, was hit by three bullets, resulting in serious injury.

"After the shooting, the defendant, Riley and Mack fled the scene and left the car on Guilford Street. From there, they summoned a cab to take them to 140 Oakland Terrace. Riley, Mack and another man later returned to the vehicle and set it on fire.

"On June 7, 2006, the defendant agreed to speak with members of the Hartford Police Department, and he provided them with information about the shooting. He told the officers about the planning of the shooting, the types of firearms used and where they could be found.

He also told them how the vehicle used in the shooting later was set on fire. The defendant, however, did not disclose his involvement in the shooting until almost three years later, in May, 2009, when he again spoke to the police and provided a written statement.

"After providing a written statement to the police, the defendant was charged [inter alia] with and later convicted of accessory to murder . . . ." Id., 460–61; see also footnote 1 of this opinion. Additional facts will be set forth as necessary.

The defendant claims, with respect to his conviction of accessory to murder, that the trial court improperly instructed the jury that it was not necessary for the state to prove that he intended to kill the victim to find him guilty of accessory to murder. The defendant concedes that he waived this claim pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). He argues, however, this instruction was "plain error and failure to grant relief would result in manifest injustice." We are not persuaded that the court committed error in its instruction.

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812.

In evaluating a claim of instructional impropriety, however, "we must view the court's jury instructions as a whole, without focusing unduly on one isolated aspect of the charge. . . . In determining whether a jury instruction is improper, the charge . . . is not to be critically dissected for the purpose of discovering

possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Carrion*, 313 Conn. 823, 845, 100 A.3d 361 (2014).

During its charge to the jury on the crime of accessory to murder, the court instructed, in relevant part: "I have provided the elements of the crime of murder previously. However, with respect to intent in this particular count, it is not necessary for a conviction of murder that the state prove that the defendant intended to kill Kerry Foster." The defendant contends that this is "a patently incorrect statement of the law" because it told the jury that the state "did not need to prove specific intent to murder." The state responds that the court's instruction was correct in law and that it did not tell the jury that it did not have to find a specific intent to kill—only that it did not have to find a specific intent to kill *this particular victim*. We agree with the state.

When instructing the jury in this case, the court repeatedly told it that in order to find the defendant guilty, it had to find that the defendant had the specific intent to kill. When the court gave its instructions on the crime of murder, *which it specifically referenced* in its instructions on accessory to murder, the court stated: "For you to find the defendant guilty of the charge of murder, the state must prove the following elements beyond a reasonable doubt:

"An intent to cause death. The first element is that the defendant specifically intended to cause the death of another person. There is no particular length of time necessary for the defendant to have formed the specific intent to kill. A person acts intentionally with respect to a result when his conscious objective is to cause such result.

"The specific intent to cause death may be inferred from circumstantial evidence. Please refer to my earlier instructions concern[ing] specific intent. The type and number of wounds inflicted may be considered as evidence of the perpetrator's intent and from such evidence an inference may be drawn that there was intent to cause death. Any inference may be drawn from the nature of any instrumentality used and the manner of its use in an inference of fact to be drawn by you upon consideration of these and other circumstances in the case in accordance with my previous instructions. This inference is not a necessary one. That is, you are not required to infer intent from the defendant's alleged conduct, but it is an inference you may draw if you find it is reasonable and logical and in accordance with my instructions on circumstantial evidence.

"The second element is that the defendant, acting with the intent to cause the death of another person, caused the death of Kerry . . . Foster. This means that

the defendant's conduct was the proximate cause of the decedent's death. You must find it proved beyond a reasonable doubt that Kerry Foster . . . died as a result of the actions of the defendant. Please refer to the earlier instructions concerning proximate cause.

"Now, summary of murder. In summary, to establish the offense of murder, the state must prove beyond a reasonable doubt: one, the defendant intended to cause the death of another person, and two, in accordance with that intent, the defendant cause[d] the death of Kerry Foster."

Then, on the particular charge of accessory to murder, the court instructed the jury in relevant part: "I have provided the elements of the crime of murder previously. However, with respect to intent in this particular count, it is not necessary for a conviction of murder that the state prove that the defendant intended to kill Kerry Foster." The court also instructed: "To establish the guilt of a defendant as an accessory . . . the state must prove criminality of the intent and community of the unlawful purpose. That is, for the defendant to be guilty as an accessory, it must be established that he acted with the mental state necessary to commit murder and that in furtherance of that crime, he solicited, requested, commanded, importuned, or intentionally aided the principal to commit murder. Evidence of mere presence as an inactive companion, or passive acquiescence, or the doing of innocent acts which, in fact, aid in the commission of a crime, is insufficient to find the defendant guilty as an accessory under the statute."

Pursuant to § 53a-8 (a): "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

Pursuant to § 53a-54a (a): "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person *or of a third person* . . . ." (Emphasis added.) "Thus, the statute on its face allows transferred intent for the crime of murder . . . . The clear meaning of the statute leads to the result that, when a person engages in conduct with the intent to *kill someone*, there can be a separate count of murder *for every person actually killed by the conduct*." (Emphasis altered.) *State* v. *Courchesne*, 296 Conn. 622, 713, 998 A.2d 1 (2010).

The facts of this case demonstrate that the defendant and his cohorts drove toward the Nelton Court area determined to kill in retaliation for the death of one of their friends earlier in the day. *State* v. *Davis*, supra, 163 Conn. App. 460–61. As they saw a group of children

standing on a corner, they opened fire, firing more than seventeen bullets toward those children, with no specific victim intended; they just intended to kill someone. Id.

We conclude that the court's instructions, tailored to the facts of this case, were correct in law and fit with the evidence presented, namely, that the defendant and his cohorts had no particular victim in mind; they just wanted to engage in a retaliatory killing. The court correctly instructed the jury that it did not have to find that the defendant intended to kill any specific person, only that the defendant intended to kill someone. On the basis of our review of the court's instructions, we conclude that the defendant's claim fails a plain error analysis. There is no error.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant also was convicted of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), and attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a). We upheld those convictions in *State* v. *Davis*, 163 Conn. App. 458, 136 A.3d 257 (2016), remanded in part, 325 Conn. 918, 163 A.3d 618 (2017). Additionally, the defendant had been charged with, but acquitted of, accessory to capital felony in violation of General Statutes (Rev. to 2005) § 53a-54b (8) and § 53a-8 (a). Pursuant to our Supreme Court's remand order, we consider under the plain error doctrine only the defendant's conviction of accessory to commit murder.