******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# PAUL DAVIS *v.* COMMISSIONER OF CORRECTION
## (AC 46237)

Moll, Cradle and Westbrook, Js.

*Syllabus*

The petitioner, who had been convicted, following a jury trial, of various crimes in connection with a drive-by shooting, sought a writ of habeas corpus, claiming a violation of his right to due process and the ineffective assistance of his trial and appellate counsel. During the petitioner's criminal trial, the jury heard testimony from, inter alia, B, a convicted felon who was incarcerated and facing additional charges at that time and who claimed to have witnessed certain events surrounding the shooting. In his petition for a writ of habeas corpus, the petitioner claimed, inter alia, that the state had violated his constitutional rights to due process and a fair trial by failing to disclose that it had offered consideration to B for his cooperation in the petitioner's criminal case and to correct B's false or misleading testimony that he had received no consideration for his cooperation and that the petitioner's trial counsel, M, had provided ineffective assistance in failing to challenge B's testimony adequately and to investigate and to present evidence of B's cooperation with the state for favorable consideration. On the first day of the petitioner's habeas trial, the habeas court noted that the petitioner's habeas counsel had been unable to subpoena B and directed the parties to agree on an additional trial date to accommodate another attempt to subpoena him. At the continued trial date, almost two months later, the petitioner's habeas counsel indicated that he had served multiple subpoenas at B's abode and that B was aware of the proceedings but had not appeared in court, and the court issued a capias and set an additional trial date for a month later. B was again absent on the final trial date, and the court denied the petitioner's motion for a continuance to procure B's attendance at the proceedings. The habeas court heard testimony from the petitioner, M, and several attorneys who previously had either represented or prosecuted criminal charges against B. The petitioner did not present B as a witness. The court rendered judgment denying the petition for a writ of habeas corpus and, on the granting of certification, the petitioner appealed to this court. *Held*:

1. The petitioner could not prevail on his unpreserved claim that the habeas court's denial of his motion for a continuance violated his constitutional right to present evidence and his right to due process under the United States and Connecticut constitutions: the petitioner was able to offer numerous exhibits and the testimony of several witnesses over the course of his three day habeas trial, and he failed to cite any cases that supported his assertion that a habeas court violates a petitioner's right to present evidence by imposing reasonable limits on the number of

delays in habeas proceedings; moreover, the habeas court granted him a continuance for the purpose of serving a subpoena on B and had issued a capias for B; accordingly, the petitioner's claim did not satisfy the third prong of *State* v. *Golding* (213 Conn. 233) as no constitutional violation existed.

2. The habeas court did not abuse its discretion in denying the petitioner's motion for a continuance: the court's denial was not arbitrary, as it considered the presence of one of the victims' families at the trial, the continuance it had previously granted and the capias it had issued for B; moreover, the petitioner did not specify the length of the continuance he requested or make a showing of his ability to achieve the purpose of the continuance were the court to grant it.

Argued February 1—officially released May 7, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Meryl Gersz*, assistant state's attorney, with whom, on the brief, were *Sharmese L. Hodge*, state's attorney, and *Angela R. Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Paul Davis, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he alleged a due process violation and ineffective assistance of his trial and appellate counsel. On appeal, the petitioner claims that the habeas court violated his constitutional right to due process and abused its discretion when it denied his motion for a continuance

to afford him additional time to secure the testimony of a witness. We affirm the judgment of the habeas court.

The following facts, as set forth by this court in the petitioner's direct appeal from his criminal conviction, and procedural history are relevant to the petitioner's claims on appeal. "[The petitioner] was a member of a gang in Hartford. On May 28, 2006, in retaliation for a shooting that occurred earlier that day in which another member of [the petitioner's] gang was shot, [the petitioner], Ackeem Riley and Dominique Mack discussed conducting a drive-by shooting in the Nelton Court area of Hartford. The trio had no specific victim intended.

"[The petitioner] drove himself, Riley and Mack toward the Nelton Court area in a car he had borrowed. Riley was armed with a nine millimeter Glock handgun. Mack was armed with a nine millimeter Taurus. As [the petitioner] drove, he, Riley and Mack saw a group of children at the corner of Elmer and Clark Streets. Riley and Mack fired at lease seventeen shots from their handguns at the group, striking two boys. One of the victims . . . a fifteen year old boy, was hit by five bullets, resulting in his death. The other victim . . . a fourteen year old boy, was hit by three bullets, resulting in serious injury.

"After the shooting, [the petitioner], Riley and Mack fled the scene and left the car on Guilford Street. From there, they summoned a cab to take them to 140 Oakland Terrace. Riley, Mack and another man later returned to the vehicle and set it on fire.

"On June 7, 2006, [the petitioner] agreed to speak with members of the Hartford Police Department, and he provided them with information about the shooting. He told the officers about the planning of the shooting, the types of firearms used and where they could be found. He also told them how the vehicle used in the shooting later was set on fire. [The petitioner], however,

did not disclose his involvement in the shooting until almost three years later, in May, 2009, when he again spoke to the police and provided a written statement." *State* v. *Davis*, 163 Conn. App. 458, 460–61, 136 A.3d 257 (2016), cert. granted, remanded for reconsideration, 325 Conn. 918, 163 A.3d 618 (2017), aff'd, 178 Conn. App. 324, 175 A.3d 71 (2017), cert. denied, 327 Conn. 1001, 176 A.3d 1194 (2018).

Following the disclosure of his involvement in the May 28, 2006 shooting, the petitioner was charged with accessory to capital felony in violation of General Statutes § 53a-8 (a) and General Statutes (Rev. to 2005) § 53a-54b (8),[1] accessory to murder in violation of General Statutes §§ 53a-8 (a) and 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), and attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a). After a jury trial—during which the prosecution admitted into evidence, inter alia, the petitioner's confession and the testimony of Lamel Brooks and Nikkia Parks, who implicated the petitioner in the shooting, the petitioner was convicted of all the charges except accessory to capital felony. The court, *Dewey, J.*, sentenced him to 100 years of incarceration.

This court affirmed the petitioner's judgment of conviction on direct appeal. *State* v. *Davis*, supra, 163 Conn. App. 460. Our Supreme Court granted certification and remanded the case to this court for consideration of a plain error claim.[2] *State* v. *Davis*, 325 Conn. 918, 918,

[1] This statute was amended, effective April 25, 2012, by the substitution of "murder with special circumstances" for "capital felony." See Public Acts 2012, No. 12-5, § 1.

[2] Specifically, this case was remanded with direction to consider the petitioner's claim that the court committed plain error by improperly instructing the jury that it was not necessary for the state to prove that the petitioner intended to kill the victim to find him guilty of accessory to murder. See *State* v. *Davis*, supra, 163 Conn. App. 477–79.

163 A.3d 618 (2017). On remand to this court, that claim was denied. *State* v. *Davis*, 178 Conn. App. 324, 326, 175 A.3d 71 (2017), cert. denied, 327 Conn. 1001, 176 A.3d 1194 (2018).

The petitioner filed a petition for a writ of habeas corpus in 2018. On September 15, 2021, the petitioner filed an amended three count petition alleging (1) violations of his due process rights, (2) ineffective assistance of his trial counsel, Dennis McMahon, and (3) ineffective assistance of his direct appellate counsel, Mary Beattie.[3] At his habeas trial, which took place on September 15, November 9 and December 8, 2022, the petitioner withdrew all but his claims alleging that (1) the

---

[3] In count one, the petitioner alleged that the state violated his due process rights during his criminal trial by failing (1) to disclose that it had offered consideration to Brooks for his cooperation during the petitioner's criminal trial, (2) to correct Brooks' false testimony at the petitioner's criminal trial that he received no consideration, (3) to disclose that it had offered consideration to Parks for her testimony during the petitioner's criminal trial, (4) to timely disclose Parks' complete criminal history, and (5) to timely disclose Parks' prior history as a police informant.

In count two, the petitioner alleged that McMahon was ineffective for failure (1) to "adequately cross-examine, impeach, and otherwise challenge the testimony of . . . Brooks," (2) to "adequately cross-examine, impeach, and otherwise challenge the testimony of . . . Parks," (3) to "adequately cross-examine, impeach, and otherwise challenge the testimony of [another witness] Edward Jachimowicz," (4) to "adequately investigate and present evidence of . . . Brooks' cooperation with the state for favorable consideration in exchange for his cooperation," (5) to "adequately investigate and present evidence of . . . Parks' cooperation with the state for favorable consideration in exchange for her cooperation," (6) to "adequately move to exclude evidence of the petitioner's purported gang involvement from evidence," (7) to "present mitigation evidence in support of a lesser sentence at the petitioner's sentencing, including the [petitioner's] institutional records from the Department of Correction and mitigating information from members of the [petitioner's] family," and (8) to "adequately investigate and present an alibi defense that the [petitioner] was with Shareece Watkins at or about the time of the offense."

In count three, the petitioner alleged that Beattie was ineffective for failure "to adequately investigate, raise and litigate the claim that the [petitioner's] right to due process and a fair trial were violated by the state's failure to preserve evidence, to wit a [nine millimeter] Glock and three associated shell casings, that had been associated with the shooting in this matter."

state had violated his constitutional right to due process and a fair trial in failing (a) to "disclose that it had offered consideration to . . . Brooks for his cooperation in the petitioner's case" and (b) to "correct . . . Brooks' false or substantially misleading testimony that he received no consideration for his cooperation with the state during the petitioner's criminal trial, which the state knew, or should have known to be false or misleading," and (2) McMahon was ineffective in failing (a) to "adequately cross-examine, impeach, and otherwise challenge the testimony of . . . Brooks" and (b) to "adequately investigate and present evidence of . . . Brooks' cooperation with the state for favorable consideration in exchange for his cooperation."

At the petitioner's habeas trial, he presented his own testimony and the testimony of McMahon; Attorney John Fahey, who prosecuted the petitioner; Attorney Keith Dubay, who represented Brooks between 2011 and 2013; Attorney Richard Rubino, who prosecuted Brooks in 2012; and Attorney Michael Weber, who prosecuted Brooks in 2013, directly after the petitioner's criminal trial. Although the petitioner successfully offered into evidence, inter alia, two letters written by Brooks; court documents related to Brooks' criminal cases that resulted in convictions in 2007, 2012, and 2013; transcripts related to Brooks' 2012 and 2013 convictions; and transcripts of his testimony at the petitioner's criminal trial, the petitioner did not present Brooks as a witness.

At a pretrial conference prior to the petitioner's habeas trial, the petitioner's habeas attorney, James Mortimer, indicated that he thought there would be "some issues with respect to at least one witness." On September 15, 2022, the first day of the petitioner's habeas trial, the court, *Bhatt, J.*, noted for the record that Mortimer had been unable to subpoena Brooks and Parks, whose testimony was essential to the petitioner's

claims. The court suggested that the parties agree on an additional trial date in order to accommodate another attempt to subpoena those witnesses.

The trial continued on November 9, 2022, and Mortimer was still unable to secure the presence of Brooks and Parks. Mortimer stated that he had served a number of subpoenas at Brooks' abode and had engaged Brooks' parole officer, who indicated that Brooks was aware of the proceedings.[4] Mortimer requested that the court issue a capias and offered into evidence three subpoenas that had been served at Brooks' abode and testimony from Ana Cantanhede, a private investigator who had located Brooks and served the subpoenas. The court found that "Brooks knows of today's proceeding. He knows it's in the afternoon. He's been properly served, and he's received the subpoena." The court then issued a capias and set the next trial date for December 8, 2022.

On December 8, 2022, Brooks was again absent despite the capias. Mortimer indicated that he had spoken to Brooks' parole officer, who informed him that Brooks "was aware that a capias had been issued" and that Brooks would try to avoid appearing in court. Mortimer requested a continuance "to afford additional time to gain custody of [Brooks] and bring him in to testify . . . ." The court, *Bhatt*, *J.*, denied the continuance, stating, "I understand that he's a necessary witness to your claims, but we've issued a subpoena. I've issued a capias. I don't know how much longer I can allow this to proceed in the . . . hope that, maybe, someday he'll agree to show up. I don't know that that's something that the court can agree to. So, I'll deny the motion for continuance."

_____

[4] Mortimer indicated to the court that he was unable to demonstrate that Parks knew of the proceeding. We note, however, that the petitioner, at his habeas trial, withdrew his claims as to Parks and, therefore, does not raise on appeal any claims relating to Parks.

Following trial, the habeas court, *Bhatt, J.*, issued a memorandum of decision, dated December 15, 2022, in which it denied the petition, holding that "[the petitioner] has not proven his claims . . . ."

In its memorandum, the habeas court noted that "the following evidence was presented to the court. . . . On March 14, 2007, Brooks pleaded guilty to one count of conspiracy to commit robbery in violation of General Statutes § 53a-134. He received a sentence of fifty months to serve. On March 9, 2008, while incarcerated, he wrote a letter to the Hartford Police Department, offering information about unsolved crimes, including the one that [the petitioner] was eventually convicted of. Not receiving a response, he then wrote a letter to the [office of the state's attorney for Hartford] on April 2, 2008, reiterating that he had information about unsolved homicides including the one that [the petitioner] was eventually convicted of. In that letter he indicated that he was serving a sentence and stated, 'I'm bringing this to the [state's] attention because I need your help and I will gladly help the [office of the state's attorney] if they please help me.' Brooks then gave a statement to police on April 16, 2008. In that statement, he stated that he saw [the petitioner] driving a red Ford Explorer with . . . Riley in the passenger seat. He then heard gunshots within seconds of the car driving past and, although he did not see who did the shooting, he knew the shots came from that car.

"In April, 2012, Brooks had two matters pending: one involved an alleged robbery and the other involved narcotics. On April 9, 2012, Brooks and his attorney . . . Dubay, appeared before Judge Alexander, and Brooks entered a plea of guilty to one count of possession of narcotics in violation of General Statutes § 21a-279 (a). At the same time, the state declined to prosecute the robbery charge. [Prosecutor] Rubino explained on the record that the state 'couldn't determine [Brooks']

role in that particular robbery.' . . . [Dubay] added that . . . '[t]here was really nothing to tie him to the robbery in any fashion.' Brooks was then sentenced to three years' incarceration, execution suspended, followed by three years' probation. Subsequently, he was arrested on May 30, 2012, for further narcotics offenses and was also charged with violating his probation. [Dubay] once again represented him on that matter.

"On March 5, 2013, Brooks testified at [the petitioner's criminal] trial. The first questions asked by [Prosecutor] Fahey, on direct [examination], were whether Brooks had felony convictions and whether he had pending cases. He answered those questions truthfully. [Fahey] then asked whether he had written letters to the police department and the [office of the state's attorney] offering information, which he again answered truthfully. While his recollection had to be refreshed with his statement to police, he ultimately testified consistently with his statement and identified [the petitioner] as the driver of the vehicle from which shots were fired. His testimony on direct examination was very brief. [McMahon] then cross-examined Brooks at length about his drug use and how that affected his memory and his ability to recall. . . . [McMahon] also cross-examined Brooks about the circumstances of his statement to police and his motivations for contacting them from jail two years after the incident. Brooks maintained that he did so because it was the right thing to do. He was also asked if he hoped for or expected anything in exchange for the information he provided to police, and he answered no.

"On March 27, 2013, Brooks pleaded guilty to one count of possession of narcotics in violation of . . . § 21a-279 (a) and admitted that he violated his probation. The agreement was for a sentence of three years' incarceration, execution suspended, followed by three

years' probation. In support of the agreement, [Prosecutor] Weber stated that [Dubay] had 'provided documentation [that led] the state to believe that [Brooks] should be given an additional opportunity to complete probation.' When given the opportunity, [Dubay] stated that he thought it was 'a fair disposition [because Brooks had] been . . . enrolled in drug treatment [and had] been coming up with negative urines and [was] on the right path . . . .' "

The habeas court recounted that Dubay, in fact, had not been "aware [at the time] that Brooks was a witness to a homicide" or "that Brooks had cooperated. Thus, he would not have been able to fashion an agreement for Brooks that took into account cooperation." Similarly, the habeas court noted that Fahey, who called Brooks as a witness in the petitioner's criminal trial, had not had "any conversations with the prosecutor prosecuting Brooks prior to Brooks' testimony" and "was clear that he did not give Brooks any consideration, was not approached by anyone to give Brooks consideration and did not instruct anyone to give Brooks consideration." The habeas court further noted that McMahon, during his representation of the petitioner, had "raised the issue" and had been "told [that] there was no . . . benefit promised" for Brooks' cooperation. The habeas court, therefore, found that the petitioner had "presented absolutely no evidence of any cooperation agreement with or promised benefit to Brooks" in exchange for his testimony at the petitioner's criminal trial. "Without such evidence," the habeas court reasoned, "there is no due process violation and . . . McMahon cannot have performed deficiently. . . . The petition is denied." Thereafter, the court granted the petition for certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the habeas court's denial of his motion for a continuance to secure

Brooks' testimony was both a violation of his due process rights and an abuse of the court's discretion.[5] We disagree.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. . . .

"A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis." (Internal quotation marks omitted.) *State* v. *Godbolt*, 161 Conn. App. 367, 374–75, 127 A.3d 1139 (2015), cert. denied, 320 Conn. 931, 134 A.3d 621 (2016).

Although "[a] reviewing court ordinarily analyzes a denial of a continuance in terms of whether the court has abused its discretion . . . [t]his is so where the denial is not directly linked to a specific constitutional right. . . . If . . . the denial of a continuance is

---

[5] The petitioner also argues that the court violated his right to due process and abused its discretion when it issued a capias that did not require Brooks to be taken into custody overnight. Beyond this bald assertion, the petitioner has failed to brief his due process claim as it relates to the capias and we therefore decline to review it. Furthermore, because the petitioner did not ask the court to issue a capias that provided for Brooks' overnight incarceration, or take exception to the court's order, his claim that the court abused its discretion is unpreserved.

directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of [such right]." (Internal quotation marks omitted.) *State* v. *Brown*, 195 Conn. App. 244, 258, 224 A.3d 905, cert. denied, 335 Conn. 902, 225 A.3d 685 (2020). "Even if the denial of a motion for a continuance on the ground of lack of due process can be directly linked to a claim of a denial of a specific constitutional right, if the reasons given for the continuance do not support any interference with the specific constitutional right, the court's analysis will revolve around whether the trial court abused its discretion. . . . In other words, the constitutional right alleged to have been violated must be shown, not merely alleged." (Citation omitted.) *In re Shaquanna M.*, 61 Conn. App. 592, 602–603, 767 A.2d 155 (2001). "A denial of constitutional due process, when shown by the particular facts, does not involve discretion because due process is an absolute right guaranteed by the constitution and allows the court no choice. 'Due process' may be a phrase impossible of precise definition, but when an act is shown by reliable facts to affect a specific constitutional right . . . the analysis should turn on whether a due process violation exists rather than whether there has been an abuse of discretion. A discretionary act and an act requiring due process are mutually exclusive." Id., 604.

"In connection with [the] inquiry into harmless error, [w]e distinguish between [these] two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. . . . Although prejudice is presumed in instances in which a defendant has suffered a deprivation of a constitutional right, in order to establish reversible error in nonconstitutional claims, the defendant must prove both an abuse of discretion and harm. . . . In this evaluation as to whether the

party denied a continuance has been harmed, we have found prejudice when the denial of a continuance precluded a defendant from obtaining the testimony of a witness known to possess exculpatory information. . . . We have declined, however, to find prejudice in instances in which a defendant can do no more than offer mere conjecture or rank speculation as to the harm flowing from a denial of a continuance." (Citations omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 802, 835 A.2d 977 (2003).

As to the petitioner's claim on appeal that the habeas court's denial of his motion for a continuance violated his due process rights, he argues that the court denied him the "right to present evidence in support of his habeas petition in violation of . . . article first, §§ 8, 10, and 12, of the [Connecticut] constitution and the fifth and fourteenth amendments to the [United States] constitution."[6] Because the petitioner did not assert this constitutional claim before the trial court, it is unpreserved. Thus, the petitioner seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn.

---

[6] The fifth amendment to the United States constitution provides in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law . . . ."

The fourteenth amendment to the United States constitution provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall have a right to be heard . . . to be confronted by the witnesses against him; [and] to have compulsory process to obtain witnesses in his behalf . . . . No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Article first, § 10, of the Connecticut constitution provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

Article first, § 12, of the Connecticut constitution provides that "[t]he privileges of the writ of habeas corpus shall not be suspended, unless, when in case of rebellion or invasion, the public safety may require it; nor in any case, but by the legislature."

233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Pursuant to the *Golding* doctrine, we may review an unpreserved claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Emphasis in original; internal quotation marks omitted.) *In re Na-Ki J.*, 222 Conn. App. 1, 7, 303 A.3d 1206, cert. denied, 348 Conn. 929, 304 A.3d 860 (2023). Assuming, without deciding, that this claim is reviewable under the first two prongs of *Golding*, we nevertheless conclude that the petitioner's claim fails under the third prong of *Golding*.

The petitioner asserts that the habeas court's denial of his motion for a continuance violates his constitutional right to present evidence and his rights under article first, §§ 8, 10, or 12, of the Connecticut constitution and the due process clauses of the fifth and fourteenth amendments to the United States constitution. We conclude that no constitutional violation exists. The petitioner does not cite any case that supports his assertion that a habeas court violates a petitioner's due process right to present evidence by imposing reasonable limits on the number of delays in the habeas proceedings. To the contrary, "[t]he trial court has the responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of

justice. . . . Once a trial has begun . . . a defendant's right to due process . . . [does not entitle] him to a continuance upon demand." (Internal quotation marks omitted.) *State* v. *Godbolt*, supra, 161 Conn. App. 376. Three of the cases the petitioner cites to support his assertion concern a court's denial of *any* opportunity to be heard. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205, 658 A.2d 559 (1995); *Sassone* v. *Lepore*, 226 Conn. 773, 777, 629 A.2d 357 (1993); *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 55, 459 A.2d 503 (1983). The other two cases the petitioner cites involved administrative hearings that provided little or no opportunity for the accused to present evidence. See *Wolff* v. *McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (discussing prison disciplinary proceedings that did not provide inmates with opportunity to present evidence);[7] *Jenkins* v. *McKeithen*, 395 U.S. 411, 428–29, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969) (finding that Louisiana law establishing labor commission procedures violated due process by "drastically limit[ing]" right of persons investigated to present evidence). Here, in contrast, the petitioner was able to offer numerous exhibits and the testimony of several witnesses over three days of trial. Further, the court granted an earlier motion for a continuance, after trial had commenced, to afford the petitioner additional time—nearly two months—to secure Brooks' appearance, and it later issued a capias for Brooks at the petitioner's request. We, therefore, conclude that the court provided the petitioner with ample opportunity

---

[7] We further note that, even if the habeas court in the present case had severely restricted the petitioner's ability to present evidence, *Wolff* v. *McDonnell*, supra, 418 U.S. 539, is not particularly supportive of the petitioner's claim. In *Wolff*, the United States Supreme Court expressed support for limits on the right to present evidence in the context of that particular case, which involved the right to call witnesses from the prison population and to present documentary evidence during inmate disciplinary proceedings. Id., 566.

to present evidence at his habeas trial. For the foregoing reasons, the petitioner's claim fails under *Golding*'s third prong.

The petitioner also claims that the habeas court's denial of his motion for a continuance was an abuse of its discretion. He argues that the denial was improper because Mortimer did everything in his power to secure Brooks' testimony, the delay associated with the continuance is not likely to have been lengthy, and the inconvenience to the court would have been minimal. Further, the petitioner contends that the improper denial harmed him because the habeas court ultimately found, after declining to issue the orders necessary to secure Brooks' testimony, that the petitioner failed to prove the existence of an agreement for Brooks' cooperation with his criminal trial. We are not persuaded.

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the [petitioner's] personal responsibility for the timing of the request; [and, if relevant] the likelihood that the denial would substantially impair the defendant's ability to defend himself. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . .

"Lastly, we emphasize that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 195 Conn. App. 259.

In the present case, the habeas court, in denying the motion for a continuance, properly considered the continuance it previously granted and the capias it issued. The court was also aware that the victim's family was present in the courtroom, because counsel for the respondent, the Commissioner of Correction, argued, in response to the petitioner's motion for a continuance, that she had "[the victim's] father and his sister here and they deserve closure." Moreover, the petitioner's proffered reasons for requesting the continuance gave the court no assurances that Brooks would appear if the court granted the continuance.[8] In light of the habeas court's previous actions, and notwithstanding its acknowledgement of the importance of Brooks to the petitioner's case, the court expressed concern about "[allowing] this to proceed" on the basis of "the *hope* that, *maybe*, someday, [Brooks will] agree to show up." (Emphasis added.) In the past, our courts have held that a denial of a motion for a continuance was not an abuse of discretion when, as in the present case, the length of the continuance was unspecified and the movant did not make a showing of his ability to achieve the purpose of the continuance. See, e.g., *State* v. *Hamilton*, 228 Conn. 234, 247–48, 636 A.2d 760 (1994); *State* v. *Godbolt*, supra, 161 Conn. App. 376–77. Making every reasonable presumption in favor of the proper exercise of the habeas court's discretion, we conclude that the petitioner failed to sustain his burden of showing that the habeas court's denial of his motion for a continuance was arbitrary. Therefore, we hold that the court did not abuse its discretion.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] In requesting the continuance, Mortimer argued that Brooks is "an important witness in this case . . . and, perhaps, with additional time, knowing his location, he will return home and be able to be picked up by the marshals. [That] would be our hope."

[9] Even if we were to find an abuse of the court's discretion, the petitioner's claim is still unavailing because he failed to demonstrate harm stemming

from the alleged abuse of discretion. McMahon, Fahey, and Dubay consistently and unequivocally testified that they had no knowledge of any agreement to provide consideration to Brooks for his cooperation in the petitioner's criminal case. Furthermore, Brooks' previous testimony reveals his repeated insistence that he had not received or been offered consideration for his testimony during the petitioner's criminal trial. The petitioner provided no argument as to how Brooks' testimony at the habeas trial would have differed from his previous testimony or how that testimony could have overcome other evidence in the record. See *State* v. *Rivera*, 268 Conn. 351, 380–81, 844 A.2d 191 (2004) (upholding court's denial of defendant's motion for continuance to rehabilitate absent alibi witness because "the defendant failed to establish that any further testimony provided by [the absent witness] upon redirect examination would have been anything other than cumulative of her previous testimony" or would provide "any further explanations . . . other than those that had already been heard by the jury").